UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
REGIONS BANK,

                        Plaintiff,                                  **OPINION & ORDER**
                                                                             22-CV-4130 (NG) (PK)

      -against-

**J1M REALTY INC.** and
**EVERTON McINTYRE,**

                        Defendants.
---------------------------------------------------------------x
**GERSHON, United States District Judge:**

      Plaintiff brings this diversity action against J1M Realty Inc. ("J1M"), a New York corporation, and its president, Everton McIntyre, principally alleging that defendants defaulted on their obligations to repay two commercial loans. Plaintiff now renews its motion for a default judgment. For the reasons set forth below, I find that plaintiff is entitled to recover from defendants the total amount of $120,566.57—consisting of $17,030.34 in past due payments, $89,651.23 in accelerated future payments, $385.00 in site inspection charges, and $13,500.00 in attorneys' fees—plus post-judgment interest on that total amount pursuant to 28 U.S.C. § 1961. Plaintiff has not established that it is entitled to "return item charges," or to the late charges or the interest on the past due payments it requests. Plaintiff is entitled to recover costs in the amount taxed by the Clerk of Court in accordance with Local Civil Rule 54.1.

## BACKGROUND

      The following facts are drawn from the complaint filed by Ascentium Capital LLC ("Ascentium") and are assumed to be true.[1] On or about March 29, 2021, J1M entered into an

---

[1] Ascentium, a Delaware limited liability company, merged into Regions Bank, an Alabama banking corporation, on March 31, 2023. The court granted plaintiff's motion to substitute

Equipment Finance Agreement ("EFA") with Ascentium to finance its purchase of computer equipment. Eight days later, on April 6, 2021, J1M entered into a second EFA with Ascentium to finance the purchase of additional computer equipment and software.

The two EFAs, both of which are attached as exhibits to the complaint, are nearly identical one-page documents. Neither agreement states the amount J1M borrowed or the interest to be charged on the loan, but each provides a specific repayment schedule. The first EFA provides for payment of 60 equal installments of $1,011.74, while the second EFA provides for 60 payments of $1,013.87 each. Neither EFA specifies a date on which these monthly payments are to commence. Rather, they state that the first payment is due on the "Commencement Date," which is defined as "the billing date specified by [Ascentium]."

Each EFA grants Ascentium a purchase money security interest in "the Collateral"—the items purchased pursuant to that loan. In addition, repayment of each loan is personally guaranteed by McIntyre. Any amount not paid when due is "subject to a late charge of the lower of 10% of such amount or the highest amount allowed by law."

Both EFAs provide that J1M will be in default if, among other things, it fails to make a payment when due. In the event of a default, Ascentium has the right to take various actions, including taking possession of the Collateral and/or accelerating the loans by declaring "all sums due and to become due … immediately due and payable." In the event of acceleration, all future payments are to be "discounted at 3% as calculated by [Ascentium]." Both EFAs provide that J1M shall reimburse Ascentium for all costs incurred in enforcing its rights, including "attorneys' fees

---

Regions Bank for Ascentium as plaintiff in this action on July 27, 2023. However, since the facts alleged in the complaint occurred prior to the merger, this opinion will refer to plaintiff as Ascentium for purposes of describing the facts of this case.

and costs of repossession, repair, storage and remarketing of the Collateral." Each EFA also provides that it "shall be governed and construed under the laws of the State of California."

According to the complaint, J1M failed to make payments on the second EFA beginning with the payment due on August 25, 2021. (Complaint at ¶ 19.) In addition, J1M failed to make payments on the first EFA beginning with the payment due on September 15, 2021. (*Id.* at ¶ 10.) On May 11, 2022, Ascentium sent J1M and McIntyre a letter entitled "Notice of Default and Acceleration" (the "Notice"), notifying J1M of the defaults under both EFAs and of Ascentium's decision to accelerate the loans and declare them immediately due and payable. (*Id.* at ¶¶ 11, 20.) That Notice, which is attached to the complaint as Exhibit B, demands payment of certain amounts due under each of the EFAs as of the date of the letter. With respect to the first EFA, the Notice demands $8,093.92 in "Past Due Payments"; $547.30 in interest on this amount, calculated at the rate of 1.5% per month; $101.17 in "Late Charges"; and $44,796.90 in "Future Payments Accelerated," discounted to present value at a 3% interest rate. The Notice also demands $120.00 in "Return Item Charges" and $192.50 in "Site Inspection Repossession Charges," though it does not offer any explanation of these charges. With respect to the second EFA, the Notice demands $8,936.42 in "Past Due Payments"; $618.06 in interest on this amount; $304.17 in "Late Charges"; $44,854.33 in "Future Payments Accelerated"; and $192.50 in "Site Inspection Repossession Charges."

The Notice demands payment of a total of $108,757.27, plus interest and fees, within ten days. (Complaint at ¶¶ 11, 20.) Neither J1M nor McIntyre, the guarantor of the loans, made any payments after receiving the Notice. (*Id.* at ¶¶ 12, 21.) On July 14, 2022, Ascentium commenced this diversity action against J1M and McIntyre.

The complaint advances six claims, the first four of which allege breach of contract. The first and third counts allege breach of the first EFA by J1M and McIntyre, respectively, and the second and fourth counts allege breach of the second EFA by J1M and McIntyre, respectively. The fifth count alleges an "account stated" theory against both defendants, and the sixth count alleges an unjust enrichment theory. The pleading demands the amounts set forth in the Notice: $53,851.79, plus accruing interest and charges, for the first EFA and $54,905.48, plus accruing interest and charges, for the second EFA. In addition, the complaint demands attorney's fees, costs, and expenses incurred by Ascentium in enforcing both contracts.

Defendants never answered or otherwise responded to the complaint. Accordingly, on August 24, 2022, Ascentium requested that the Clerk of Court issue a certificate of default pursuant to Fed. R. Civ. P. 55(a). The Clerk entered the certificate on August 30, 2022, and Ascentium filed its initial motion for default judgment in mid-October 2022. That initial motion consisted of a six-page memorandum of law and three declarations from plaintiff's counsel which, collectively, attached 11 exhibits. The memorandum of law demanded the amount of damages due under each of the EFAs as of October 21, 2022—$55,461.42 for the first EFA and $56,278.54 for the second EFA—plus attorneys' fees and costs. Like the Notice, the memorandum of law itemized the damages only to the extent of breaking them into six components: "Past Due Payments," "Default interest on the past due amounts," "Late Charges," "Future payments accelerated, with a 3% present value discount applied," "Return Item Charges," and "Site Inspection Charges." There was no explanation as to how these figures were calculated or even what comprised the Return Item Charges or Site Inspection Charges.

4

At a motion hearing on February 2, 2024, I denied the motion for default judgment without prejudice. I discussed the deficiencies in plaintiff's documentation and the calculations in some detail and gave plaintiff leave to file a revised motion curing these deficiencies.

Plaintiff has now filed a renewed motion for default judgment. Plaintiff's submission consists of three documents: a 22-page memorandum of law ("Plaintiff's Memorandum"), a declaration of Ascentium's Vice President-Asset Management, Jerry Noon (the "Noon Declaration"), and a declaration of one of plaintiff's attorneys, Margaret M. Siller (the "Siller Declaration"). Like the complaint, Plaintiff's Memorandum seeks the same amounts demanded in the Notice.

The Noon Declaration provides information regarding the payments Ascentium received from J1M and the calculation of late charges, default interest on past due amounts, and accelerated future payments. The declaration also explains the Site Inspection Charges and the Return Item Charges, alleging that the latter were specifically authorized by the EFAs. The Siller Declaration relates only to plaintiff's application for attorneys' fees and attaches contemporary billing records and biographical information regarding plaintiff's three attorneys. To date, defendants have not responded to the renewed motion.

## DISCUSSION

On a motion for default judgment, a court is required to accept all of the complaint's factual allegations as true and to draw all reasonable inferences in the plaintiff's favor. *Mirlis v. Greer*, 80 F.4th 377, 383 (2d Cir. 2023). The court is then required "to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Id.* (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (brackets added in *Mirlis*).

5

"[T]he allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Accordingly, the court "must … conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* Although Federal Rule of Civil Procedure 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, this Rule "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court can instead rely on detailed affidavits or documentary evidence to determine damages. *Id.*

In this case, there is no question that the allegations of the complaint establish that J1M breached both EFAs by failing to make payments when due. In addition, there is no question that McIntyre unconditionally guaranteed the payments and the performance of all obligations under the contracts. Accordingly, the only issue is the amount of damages defendants will be ordered to pay on account of the breach.

**Past Due Payments**

Like the Notice that Ascentium sent to defendants on May 11, 2022, Plaintiff's Memorandum demands past due payments of $8,093.92 with respect to the first EFA and $8,936.42 with respect to the second EFA. The Noon Declaration explains how these figures were calculated. First, the declaration implies that J1M made the first five monthly payments due under the first EFA, but failed to make the payment due on September 15, 2021, and the payments due on the fifteen day of each month thereafter. (*Id.* at ¶¶ 5-6.) As of May 11, 2022, defendants had missed eight monthly payments of $1,011.74—a total of $8,093.92. (*Id.* at ¶ 6.)

Similarly, the Noon Declaration implies that J1M made the first four monthly payments due under the second EFA. (*Id.* at ¶ 5.) J1M paid only $188.41 of the $1,103.87 due on August

6

25, 2021, and failed to make the payments due on the twenty-fifth day of each month thereafter. (*Id.*) As of May 11, 2022, J1M owed eight monthly payments of $1,013.87 plus a partial payment of $825.46—a total of $8,936.42. (*Id.* at ¶ 6.) Since defendants have not disputed the Noon Declaration, I find that plaintiff is entitled to a total of $17,030.34 in "Past Due Payments" under the two contracts.

**Future Payments Accelerated**

In addition to past due payments, plaintiff demands accelerated future payments of $44,796.90 with respect to the first EFA and $44,854.33 with respect to the second EFA for the period after May 11, 2022. Per the terms of the EFAs, all future payments are discounted at 3%. As of May 11, 2022, there were 47 monthly payments of $1,011.74 due under the first EFA and 47 monthly payments of $1,013.87 due under the second EFA. (Noon Decl. at ¶ 7.) Each of these future monthly payments was discounted by a different amount depending on how far into the future it was due.

As explained in the Noon Declaration, there are various computer programs that calculate present value. The programs produce different results. The "T-Value" program that was regularly used by Ascentium in the normal course of its business produced a present value of $44,868.43 for the 47 payments of $1,011.74 due under the first EFA, and a present value of $44,962.87 for the 47 payments of $1,013.87 due under the second EFA. (*Id.* at ¶ 8.) Ascentium's accounting system calculated slightly lower present values: $44,796.90 for the first EFA and $44,854.33 for the second EFA. (*Id.* at ¶ 7.)

Both EFAs provide that, if J1M defaults, Ascentium may demand "future payments discounted at 3% as calculated by [Ascentium]." The future payments demanded in the Notice were those calculated by Ascentium's accounting system and Plaintiff's Memorandum requests

that the court award only these amounts, even though the T-Value program calculated higher amounts. Since the EFAs give Ascentium the right to calculate present value, I will grant plaintiff's request and will award accelerated future payments of $44,796.90 for the first EFA and $44,854.33 for the second EFA—a total of 89,651.23.

### Site Inspection Charges

Plaintiff requests $385.00 relating to "'Inspection Services' provided by a 'Division of RTR Services, Inc.'" (Plaintiff's Memorandum at 19.) Noon claims that "Ascentium incurred these inspection charges when it engaged a repo agent to attempt to locate the borrower and the collateral under the EFAs." (Noon Decl. at ¶ 12.) Noon attaches two invoices from "Inspection Services, a Division of RTR Services, Inc." to substantiate his claim: one dated August 30, 2021, for $175.00 and another dated January 18, 2022, for $210.00. (*Id.*, Ex. 2.) Both invoices state that these charges relate to inspection services rendered in connection with J1M's account.

Both EFAs require J1M to reimburse Ascentium for all costs it incurs in enforcing its rights under the contracts, including "costs of repossession, repair, storage and remarketing of the Collateral." Although there is no evidence that Ascentium ever repossessed the Collateral, the Noon Declaration establishes that the inspections were in furtherance of repossession efforts. According, I find that plaintiff is entitled to $385.00 in site inspection charges.

### Interest on Past Due Payments and Late Charges

Each of the EFAs expressly provides that J1M will "pay … interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law." Each also provides that "[a]ny amount not paid when due is subject to a late charge of the lower of 10% of such amount or the highest amount allowed by law."

Plaintiff does not provide any evidence or legal analysis as to the highest interest rate allowed under California law, but incorrectly asserts that, "Defendants agreed that interest may be charged at the rate of 1.5% per month (18% per annum) on [an] amount not paid when due." (Noon Decl. at ¶ 14.) Similarly, plaintiff provides no discussion of whether the late charge of 10% exceeds "the highest amount allowed by law," but simply assumes that a 10% late charge is permissible. Under these circumstances, plaintiff's request for interest on past due payments and late charges is denied.

**Return Item Charges**

Plaintiff's Memorandum seeks $120.00 in return item charges with respect to the first EFA, but plaintiff has not established that it is contractually entitled to recover these charges. The Noon Declaration states that, "[a]s of the Acceleration Date, Defendants owed $120.00 in return item charges (NSF charges) pursuant to the terms of the EFAs which allow $30.00 for each returned item." (Noon Decl. at ¶ 13.) Plaintiff's Memorandum cites this paragraph of the Noon Declaration for the proposition that, "Defendants agreed that Ascentium would be permitted to charge $30.00 for each returned item." (Plaintiff's Memorandum at 19.) However, neither EFA makes any mention of such items or expressly authorizes a $30.00 charge. Indeed, the only provision of the EFAs cited by plaintiff in support of its request for return item charges is a sentence in the paragraph addressing "Fees and Taxes," in which J1M agrees to pay Ascentium "documentation fees" and "all other fees" Ascentium deems necessary. There is nothing to suggest that this provision encompasses return item charges. Accordingly, I find no contractual basis for awarding return item charges.

**Attorneys' Fees**

The awarding of attorneys' fees in diversity cases is governed by state law. *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31 (1975)). State law also controls the method of calculating the size of the award. *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) (citing cases rejecting federal methods of calculating fees in favor of state methods). Since both EFAs expressly provide that they "shall be governed and construed under the laws of the State of California," I will apply California law in determining attorneys' fees.

"California law … provides for the recovery of attorney's fees when authorized by contract …." *Citcon USA, LLC v. RiverPay Inc.*, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000), as modified (June 2, 2000). "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id.*

Although plaintiff has not produced evidence that its counsel's hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Rivera v. Crema Coffee Co. LLC*, 2020 WL 4701131, at *2 (N.D. Cal. Aug. 13, 2020), I find, based on my years of experience in this district, that the rates charged by plaintiff's counsel are reasonable.[2] Plaintiff seeks $433 per hour for the 0.8 hours spent by

---

[2] Under California law, "an attorney should present … 'expert opinion, by [the applicant] and other lawyers, as to what would be a reasonable fee ….'" *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (quoting *Martino v. Denevi*, 182 Cal. App. 3d 553, 558 (Cal. Ct. App. 1986)) (brackets in *Martino*). However, because "[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise," the court "may

10

shareholder Robert H. Fowlkes; $380 for each of the 37.4 hours expended by Margaret M. Siller, who was originally "of counsel" but became a shareholder in 2024; and roughly $286 for each of the 18.7 hours expended by associate Mary K. Mangan.  "[C]ourts in this District have repeatedly concluded that rates of $200 to $450 per hour are reasonable for partners and rates of $200 to $325 per hour are reasonable for senior associates." *Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 2024 WL 4344846, at *2 (E.D.N.Y. Sept. 30, 2024) (citing *Crews v. Cnty. of Nassau*, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019) (collecting cases)).

Plaintiff has provided contemporaneous time records that detail the hours its attorneys spent on this litigation.  Counsel appropriately limited the hours spent by shareholders on this litigation and discounted all attorneys' fees by 25% as a courtesy to plaintiff.  Under these circumstances, the court has no problem finding that the hours requested by counsel are reasonable.

Multiplying the hours expended by each of the three attorneys by their hourly rate yields a lodestar of nearly $15,000.  However, this amount includes fees for time spent preparing both the initial motion for a default judgment and the renewed motion.  Since the initial motion was deficient in that it did not adequately explain the damages that plaintiff sought to recover, I will not award fees for the time spent preparing that motion.  I estimate that approximately 10% of the requested hours are attributable to this initial motion and, accordingly, will reduce the fees requested by this percentage.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants," and "may take into account their overall sense of a suit, and may use estimates in calculating and

---

make its own determination of the value of the services contrary to, or without the necessity for, expert testimony." *PLCM Grp.*, 997 P.2d at 519.

allocating an attorney's time.") Accordingly, I find that plaintiff is entitled to $13,500 in attorneys' fees.

### Costs and Post-Judgment Interest

In diversity cases, an award of costs is governed by Federal Rule of Civil Procedure 54(d). *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 567 F. App'x 527, 528–29 (9th Cir. 2014); *Ingevity Corp. v. Regent Tek Indus., Inc.*, 2023 WL 2553896, at *12 (E.D.N.Y. Mar. 17, 2023). That Rule provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Accordingly, plaintiff is entitled to recover taxable costs in an amount to be determined by the Clerk of Court in accordance with Local Civil Rule 54.1.[3] Plaintiff is also entitled to post-judgment interest from the date the Clerk of Court enters judgment in this action until the date of payment at the rate set forth in 28 U.S.C. § 1961.

### CONCLUSION

For the reasons stated above, I find that plaintiff is entitled to recover from defendants the amount of $120,566.57, consisting of $17,030.34 in past due payments, $89,651.23 in accelerated future payments, $385.00 in site inspection charges, and $13,500.00 in attorneys' fees. I will not permit recovery for "return item charges" or late charges, and will not award interest on the past due payments. Plaintiff is entitled to recover taxable costs in an amount to be determined by the Clerk of Court in accordance with Local Civil Rule 54.1. Plaintiff is also entitled to post-judgment interest from the date the Clerk of Court enters judgment in this action until the date of payment

---

[3] To recover costs, plaintiff must electronically file with the Clerk of Court a notice of taxation of costs within the time period set forth in Local Civil Rule 54.1(a). The notice of taxation must annex a bill of costs, which must include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred. Bills for the costs claimed must be attached as exhibits.

at the rate set forth in 28 U.S.C. § 1961. The Clerk of Court is respectfully directed to enter judgment in accordance with this Opinion and Order.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

November 14, 2024
Brooklyn, New York